STATE of Utah, Plaintiff and Appellee,

v.

**Steven Michael STILLING, Defendant and Appellant.**

No. 920186–CA.

Court of Appeals of Utah.

June 25, 1993.

Jo Carol Nesset–Sale (argued), Haley & Stolebarger, Salt Lake City, for defendant and appellant.

Jan Graham, State Atty. Gen., and J. Kevin Murphy (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GREENWOOD and JACKSON, JJ., and RUSSON, Associate P.J.

GREENWOOD, Judge:

Defendant, Steven Michael Stilling, appeals the trial court's denial of his motion to withdraw his guilty pleas five years after the pleas were entered.[1] In 1985, Stilling pled guilty to three counts of robbery, second degree felonies under Utah Code Ann. § 76–6–301 (1990). We affirm.

## BACKGROUND

### Guilty Plea Hearing

As a result of alleged incidents in March of 1984, Stilling was charged with four counts of aggravated robbery, first degree felonies under Utah Code Ann. § 76–6–302 (1990). The State also sought an enhanced penalty for Stilling, as an habitual criminal under Utah Code Ann. § 76–8–1001 (1990). At his arraignment on August 31, 1984, before Judge Ronald O. Hyde, the informations were read aloud to Stilling and he pled not guilty. After hearings on various discovery and jurisdictional matters, Stilling decided to enter into a plea agreement. In furtherance of the plea agreement, the State filed amended informations on February 13, 1985, charging Stilling with three counts of robbery, second degree felonies under Utah Code Ann. § 76–6–301 (1990). The State dropped the fourth robbery

---

1. A 1989 amendment to Utah Code Ann. § 77–13–6 established a thirty-day limit for motions to withdraw guilty pleas. No similar provision existed when Stilling entered his plea and the State has not argued for retroactive application of the statute. *See State v. Quintana,* 826 P.2d 1068, 1069 (Utah App.1991).

count and the habitual criminal enhancement.

Stilling pled guilty to the three counts of robbery pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), under which he maintained his innocence while pleading guilty in order to accept a favorable plea agreement. The minute entry for the plea hearing states that the amended informations were filed in open court, copies given to Stilling and "the charge" read by the clerk. At the plea hearing, the court asked Stilling several questions, seeking oral responses which would indicate his understanding of the ramifications of his plea. First, the court compared the previous charges, "first degree felonies, committed with the use of a firearm," to the new charges, "second degree felonies, robbery by force and fear." The court then explained the difference in the penalties that attached to the second degree felonies. Defendant indicated he understood the nature of the new charges and the less serious sentences they potentially carried. Next, the court asked Stilling if he understood he was waiving his right to a jury trial and the ability to confront witnesses against him. The court apprised Stilling of his privilege against self incrimination and noted that the court would treat his plea as an admission of guilt for sentencing purposes. Stilling was advised that he had the right to appeal his sentence, but that a guilty plea "did not leave much" from which to appeal. The court also asked whether Stilling had been given any promises in exchange for his plea, and whether he had been coerced or threatened in any way. Stilling was also asked whether his judgment was impaired by alcohol or drugs. Stilling indicated that he had gone over the plea agreement with his attorney and believed he understood it.

The court then discussed with Stilling an expiation agreement[2] that his counsel, Bernard Allen, had prepared and submitted to the court at the plea hearing. The agreement contained numbered paragraphs after which Stilling had signed the initials "S.S.,"

indicating his review of that topic with his attorney. Initially, the expiation agreement indicated that Stilling's attorney had

> gone over the facts of [Stilling's] cases very carefully, and [had] talked with the State's key witness and [had] the statements of all the witnesses which the law enforcement officers and the prosecuting attorney claim[ed] to have.

The agreement then listed the original charges and the reduced charges under the plea agreement.

The expiation agreement indicated that "[Stilling was] entering a plea voluntarily and of [his] own free will after conferring with [his] ... attorney." The agreement stated that because the trial court had refused to grant dismissal of the charges, Stilling felt he "was in a position of severe exposure of being convicted on the 1st degree felonies." Both Stilling and his attorney signed the expiation agreement, and his attorney certified that the agreement had been discussed with his client and fully understood by him. On February 13, 1985, Stilling was sentenced to one to fifteen years in the Utah State Prison on the three second degree robbery charges.

### Motion to Withdraw Guilty Plea

In August of 1990, Stilling filed a pro-se petition for post-conviction relief to set aside his guilty pleas. The court assigned Stilling counsel and the petition was amended several times, finally resulting in a motion to withdraw the guilty pleas. Judge Hyde recused himself and Judge David E. Roth was assigned to the case. One of Stilling's amended motions alleged that deficiencies at the plea hearing were due in part to ineffective assistance of counsel. The State responded with an affidavit of Stilling's trial counsel, Bernard Allen, in which Allen described meetings with Stilling leading up to the plea agreement and hearing. The affidavit included Allen's assessment of Stilling's mental capabilities and of Stilling's understanding of the consequences of the plea agreement. Stilling objected to the affidavit on the

---

**2.** The expiation agreement constituted the affi- davit normally used in guilty plea proceedings.

basis that it violated the attorney-client privilege. New counsel entered an appearance for Stilling and clarified the scope of the plea withdrawal motion, dropping the ineffective counsel claim and renewing the request to exclude Allen's affidavit.

At the plea withdrawal hearing, Stilling's counsel argued that the trial court had failed to inquire adequately into the factual basis for Stilling's guilty plea. The argument stressed the inadequacy of the plea hearing under both procedural and constitutional requirements for a guilty plea and requirements for an *Alford* plea in particular.

The State argued that the trial court had substantially complied with the requirements for entry of a guilty plea, claiming that inquiry into evidence of actual guilt was merely discretionary. The State also maintained that the record as a whole demonstrated sufficient evidence of substantial compliance with guilty plea requirements, without resorting to the affidavit submitted by Stilling's trial attorney. Nevertheless, the State argued that the affidavit was properly admitted and could be considered as part of the record.

The trial court found that Stilling's guilty plea was knowing and voluntary and denied the motion to withdraw his guilty pleas. The court also entered conclusions of law, paraphrased as follows:

1. The record as it existed at the time of the plea was insufficient to establish substantial compliance with Rule 11;

2. The State can demonstrate that the plea was knowing and voluntary through the use of an affidavit from Stilling's trial counsel; and

3. The affidavit demonstrates that Stilling's guilty plea was knowing and voluntary, and submission of the affidavit did not violate the attorney-client privilege.

Stilling appeals this decision.

## ISSUES

Stilling claims on appeal that the trial court erred by (1) denying his motion to withdraw his guilty plea because the plea proceedings did not comply with Utah R.Crim.P. 11 and lacked a factual basis; and (2) holding that the State could rectify the lack of substantial compliance with requirements for entry of a guilty plea by supplementing the plea hearing record with the Allen affidavit, evidence not available at the time of the hearing.

The State seeks affirmance of the court's decision to deny the withdrawal of the guilty plea, but on different grounds than those stated in the trial court's ruling. The State claims that the trial court's ruling regarding lack of substantial compliance at the plea hearing was error. The State, therefore, urges this court to evaluate Stilling's motion based on the record existing after the plea hearing to determine whether there was substantial compliance with constitutional and procedural requirements for entry of a guilty plea. In the alternative, the State argues that the trial court properly admitted the affidavit of Stilling's trial attorney and that this evidence, together with the record as it existed at the plea hearing, sufficiently supports the court's substantial compliance ruling.

## STANDARD OF REVIEW

 Appellate courts "review the ultimate decision to deny a motion to withdraw a guilty plea under an abuse of discretion standard." *State v. Gardner*, 844 P.2d 293, 295 (Utah 1992). The trial court's findings of fact which lead to its ultimate decision will not be "set aside unless they are clearly erroneous." *Id.* The trial court's ruling regarding substantial compliance with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness. *See Willet v. Barnes*, 842 P.2d 860, 861 (Utah 1992); *State v. Hoff*, 814 P.2d 1119, 1124–25 (Utah 1991).

## ANALYSIS

 The requirements for accepting guilty pleas have evolved through court decisions construing both procedural rules and constitutionally guaranteed due process. Reviewing courts, in evaluating individual defendant's pleas, often overlap the

doctrines from these two sources. That overlap is predictable, given that the procedural rules are meant, to some extent at least, to incorporate constitutional protections. *See U.S. v. Newman,* 912 F.2d 1119, 1123 (9th Cir.1990); *Salazar v. Utah State Prison,* 212 Utah 7, 8–9, 852 P.2d 988 (Utah 1993). The plea-taking proceedings are intended to insure that a defendant who pleads guilty knowingly and voluntarily waives the protections the constitution guarantees him or her prior to a trial verdict. See Utah R.Crim.P. 11(c). This requirement protects a defendant's rights to due process. *State v. Gibbons,* 740 P.2d 1309, 1312 (Utah 1987). The proceedings must demonstrate that the defendant understands the nature of each element of the offense charged and the burden on the State to prove each element beyond a reasonable doubt. Utah R.Crim.P. 11(d). The requirement that the record as a whole demonstrate "facts that would substantiate the prosecution of the charge at trial" has been described as the need for a factual basis for the plea. *Willett v. Barnes* 842 P.2d 860, 862 (Utah 1992).

■ Implementation of these requirements for accepting a guilty plea vary somewhat when the defendant enters an *Alford* plea, whereby he or she is sentenced without admitting guilt. In those cases the record must demonstrate that there is evidence of the defendant's actual guilt. *North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970).

Our evaluation of this case focuses on two basic legal considerations: (1) the trial court's substantial compliance with constitutional and procedural requirements for entry of guilty pleas in general; and (2) the trial court's conformance with the legal requirements for an *Alford* plea.

■ We note at the outset that the plea in this case was taken prior to the Utah Supreme Court's decision in *State v. Gibbons,* which required strict compliance with constitutional and procedural requirements during the plea colloquy. *Gibbons,* 740 P.2d at 1312–14. Pleas taken prior to *Gibbons* require "reviewing courts to uphold guilty pleas as long as the record as a whole demonstrate[s] 'substantial compliance' with constitutional and procedural requirements." *Willett,* 842 P.2d at 861 (quoting *State v. Hoff,* 814 P.2d 1119, 1123–24 (Utah 1991)).[3]

■ A guilty plea must be knowingly and voluntarily made in order to protect a defendant's due process rights. *Gibbons,* 740 P.2d at 1312. A significant departure from constitutional and procedural requirements creates doubt as to the knowing and voluntary nature of a defendant's plea. *See Hoff,* 814 P.2d at 1125. "The determination of whether there was substantial compliance [with constitutional and procedural requirements] must necessarily turn on the facts of each case." *Id.*

### Utah's Factual Basis Requirement

Although Utah's Rule 11 does not specifically require a factual basis for a guilty

---

3. The current Utah Rule of Criminal Procedure 11, formerly Utah Code Ann. § 77–35–11, outlines the procedural requirements for the taking of guilty pleas:

(5) The court may refuse to accept a plea of guilty or no contest, and may not accept the plea until the court has found:

(a) if the defendant is not represented by counsel, he has knowingly waived his right to counsel and does not desire counsel;

(b) the plea is voluntarily made;

(c) the defendant knows he has rights against compulsory self-incrimination, to a jury trial, and to confront and cross-examine in open court the witnesses against him, and that by entering the plea he waives all of those rights;

(d) the defendant understands the nature and elements of the offense to which he is

entering the plea; that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt; and that the plea is an admission of all those elements;

(e) the defendant knows the minimum and maximum sentence that may be imposed upon him for each offense to which a plea is entered, including the possibility of the imposition of consecutive sentences;

(f) if the tendered plea is a result of a prior plea discussion and plea agreement, and if so, what agreement has been reached; and

(g) the defendant has been advised of the time limits for filing any motion to withdraw a plea of guilty or no contest.

A 1989 amendment redesignated the subdivisions in the rule.

plea, as does the federal counterpart, Fed. R.Crim.P. 11(f), Utah case law has imposed such a requirement on, at least, pre-*Gibbons* guilty pleas. Our supreme court recently addressed the need for evidence of a factual basis [4] as indicia of substantial compliance "with constitutional and procedural requirements." *Willett v. Barnes*, 842 P.2d 860, 861 (Utah 1992) (involving a pre-*Gibbons* plea). In *Willett*, the supreme court described this factual basis requirement as a demonstration from the record as a whole of "facts that would substantiate the prosecution of the charges at trial." *Id.* at 862. *Willett* links a record of "facts that would place the defendant at risk of conviction should the matter proceed to trial" with the knowing and voluntary nature of a guilty plea. *Id.*

■ The Utah Supreme Court first enunciated the need for a factual basis for the plea as a requirement for entry of guilty pleas in *State v. Breckenridge*, 688 P.2d 440, 443 (Utah 1983). *Breckenridge* "suggested that a valid guilty plea required a 'record of facts' showing either 'that the charged crime was actually committed by the defendant, or that the defendant has for some other legitimate reason intelligently and voluntarily entered such a plea.'" *Willett*, 842 P.2d at 862 (quoting *Breckenridge*, 688 P.2d at 440). In *Breckenridge*, the court held that when the record did not demonstrate that the defendant understood the nature and elements of the crime charged, the defendant could not voluntarily plead guilty. *Breckenridge*, 688 P.2d at 444. The *Willett* court clarified the *Breckenridge* holding, stating that the record must reveal either facts that would support the prosecution of a defendant at trial or facts that would suggest a defendant faces a substantial risk of conviction at trial, "not merely facts establishing the defendant's motivation for entering the plea." *Willett*, 842 P.2d at 862. Therefore, the record in Stilling's case must demonstrate substantial compliance with *Willett*'s factual basis requirement.

---

**4.** The district court rules of practice in effect at the time when both Willet and Stilling entered their pleas, required the court to determine "that there is a factual basis for the plea."

### *Alford*'s Factual Basis Requirement

■ While typically guilty pleas "consist of both a waiver of trial and an express admission of guilt," *Alford* pleas are ones in which a defendant "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). The *Alford* court held that "an express admission of guilt ... is not a constitutional requisite to the imposition of criminal penalty." *Id.* at 37–38, 91 S.Ct. at 167. The Court upheld defendant's guilty plea after reviewing the plea "in light of the evidence against [the defendant] which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered." *Id.* at 38, 91 S.Ct. at 167. The *Alford* court further stated:

> Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, (citations omitted) and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence.

*Id.* at 38 n. 10, 91 S.Ct. at 167–68 n. 10. The *Alford* court ultimately determined that "[i]n view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." *Id.* at 38, 91 S.Ct. at 168. Subsequent federal court decisions have confirmed that *Alford*'s factual basis requirement is

Rules of Practice, Utah District and Circuit Courts, Rule 3.6(c) (replaced by the Code of Judicial Administration).

grounded in constitutional due process, rather than in federal Rule 11. *See Stano v. Dugger,* 921 F.2d 1125, 1140–41 (11th Cir.1991); *U.S. v. Newman,* 912 F.2d 1119, 1123 (9th Cir.1990); *Willett v. Georgia,* 608 F.2d 538, 540 (5th Cir.1979). In order to insure that pleas of this type conform with constitutional due process requirements, therefore, *Alford* requires a factual basis for the plea. *Alford,* 400 U.S. at 38, 91 S.Ct. at 168.[5]

Because Rule 11 of the Federal Rules of Criminal Procedure requires that a factual basis for a defendant's charges be entered at the plea hearing,[6] federal case law regarding the sufficiency of factual bases for pleas is typically analyzed under this procedural requirement. *See, e.g., United States v. Guichard,* 779 F.2d 1139 (5th Cir.), *cert. denied,* 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986); *United States v. Bernal,* 861 F.2d 434 (5th Cir.1988), *cert. denied,* 493 U.S. 872, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989); *United States v. De-Fusco,* 949 F.2d 114 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992). Some cases involving both Rule 11 compliance and *Alford* pleas have mixed the analysis of the requirements for each, leaving unclear the importance of *Alford's* factual basis requirement. For example in *United States v. Keiswetter,* 860 F.2d 992 (10th Cir.1988) (*Keiswetter I*), the dissent analyzed the guilty plea's factual basis under *Alford.* The dissent in *Keiswetter I* concluded that

> a reviewing court must find evidence presented at the taking of the plea which strongly suggests the guilt of the accused. Without such strong evidence, refusal to permit the withdrawal of the plea would result in the anachronism of

forcing a conviction to stand without evidence of guilt.

860 F.2d at 998. The dissent opined that because violation of Rule 11 requires avoidance of a plea under existing Supreme Court law, violation of *Alford's* factual basis requirement should produce the same result. *Id.* at 999. After an en banc rehearing, however, the majority adopted the result urged in *Keiswetter I*'s dissent, but ultimately relied on Rule 11 for the basis of its decision. *United States v. Keiswetter,* 866 F.2d 1301 (10th Cir.1989) (*Keiswetter II*).

By contrast, the eighth circuit separately analyzed an *Alford* plea, and construed the required factual basis for the charge as requiring evidence going to each element of the crime at the time of the plea hearing. *United States v. White,* 724 F.2d 714 (8th Cir.1984). Because the defendant did not admit guilt on one of the elements of the charged crime, the State had presented a witness to testify as to that element of the crime. Later, the defendant sought to withdraw his *Alford* plea, claiming that the unreliable witness could not supply the factual basis for the charge. *Id.* at 716. The eighth circuit court held that the testimony of an allegedly unreliable witness at defendant's plea hearing created a sufficient factual basis to support entry of his *Alford* plea. *Id.*

Other state appellate courts have construed *Alford* pleas as requiring an inquiry into the factual basis for the charge, and have addressed how the factual basis may be established.[7] For example, Arizona courts determine the validity of *Alford* pleas by examining two factors:

> First, the state's factual basis must show substantial evidence that defendant com-

---

**5.** Although in *Alford,* the Court found a "strong" factual basis for the plea under the particular facts, we do not read the opinion as specifying the quantum of evidence needed to establish the required factual basis.

**6.** Rule 11 of the Federal Rules of Criminal Procedure provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f).

Rule 11 of Utah's Criminal Procedure Code does not contain the same provision. *See State v. Smith,* 812 P.2d 470, 478 n. 3 (Utah App.1991) (Utah may have deliberately omitted 11(f) from our rules).

**7.** *See, e.g., Johnston v. State,* 829 P.2d 1179, 1182 (Wyo.1992); *Amerson v. State,* 812 P.2d 301, 303 (Idaho App.1991); *Simons v. State,* 773 P.2d 1156, 1163 (Idaho App.1989); *Tiger v. State,* 98 Nev. 555, 654 P.2d 1031, 1033 (1982).

mitted the crime; second, the record must reflect that defendant made a voluntary, knowing, and intelligent decision to enter a guilty plea although he maintained his innocence.

*State v. Draper*, 162 Ariz. 433, 784 P.2d 259, 262 (1989). The State must "properly establish[ ] a complete factual basis, containing every element of the crime, in its recitation to the trial court of what the state's evidence would show if the case had proceeded to trial." *Id.* Because "defendant's decision whether to enter an *Alford* plea is directly affected by his knowledge of the strength of the state's case against him[,]" it is usually someone other than the defendant who establishes the factual basis. *Id.* at 263 (citing *State v. King*, 116 Ariz. 353, 569 P.2d 295, 297 (App.1977) ("factual basis for *Alford* plea was established by prosecutor's recitation of the state's case"). *See also State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983, 985 (1984) (factual basis for *Alford* plea can be established by "the record as a whole or any part of it, including a preliminary hearing"). In *Draper* the prosecutor's proffer of testimony of the victim and her mother at the plea hearing was found adequate to establish the factual basis for the defendant's plea.

▇▇ There are no Utah cases directly addressing *Alford* pleas. However, based on the *Alford* opinion, cases from other jurisdictions and Utah's *Willett* and *Breckenridge* decisions, we are persuaded that a factual basis for the plea must appear on the record as a whole in pre-*Gibbons* cases. In the more usual Rule 11 guilty plea situation, the factual basis requirement insures that a defendant understands the strength of the State's case and admits to each element of the charged crime. In *Alford*

plea cases, however, when a defendant necessarily does not admit to all elements of the charged crimes, the record must be sufficient to satisfy the trial court and/or a reviewing court that the State's case is strong enough to warrant acceptance of the plea when guilt is not admitted by the defendant.[8] While the record as a whole need not be conclusive or uncontroverted on the question of guilt, "there must be evidence from which a court could reasonably find that the defendant was guilty—a factual basis for the plea." *United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988).

### Stilling's *Alford* Plea

In applying the factual basis requirement of *Alford* to this case, we conclude that the record as a whole demonstrates the required indicia of actual guilt necessary to satisfy *Alford*'s due process requirements.

▇▇ The record we examine to determine the presence of a factual basis for Stilling's plea consists of the entire record before us on appeal, which includes all portions of the trial court record certified on appeal. Although Stilling has argued that the record as a whole should be limited to the plea hearing proceedings, we include in our review other portions of the trial court record and the affidavit of Stilling's trial counsel, Bernard Allen.[9] The recent decision in *Salazar v. Utah State Prison*, 212 Utah 7, 9, 852 P.2d 988 (1993), held that courts considering alleged violations in the taking of guilty pleas are "not limited to the record of the plea hearing but may look at the surrounding facts and circumstances, including the information the petitioner received from his or her attorneys

---

**8.** We note a possible conflict between our holding in this case and *State v. Smith*, 812 P.2d 470, 478 n. 4 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992). To the extent that *Smith* implied that a factual basis was not necessary for an *Alford* plea, it was incorrect. *See North Carolina v. Alford*, 400 U.S. 25, 38 n. 10, 91 S.Ct. 160, 167 n. 10, 27 L.Ed.2d 162 (1970).

**9.** In *Willett,* the supreme court remanded the case to the trial court to determine if the prelim-

inary hearing transcript contained evidence of a factual basis for the guilty plea. *Willett*, 842 P.2d at 863. Similarly, *Alford* plea cases have examined the record of both the plea and preliminary hearings to deduce the factual basis for a defendant's charges. *See State v. Hamilton*, 142 Ariz. 91, 688 P.2d 983, 985 (1984). However, because Stilling did not have a preliminary hearing, we are precluded from issuing a similar remand order.

before entering the plea." [10] *See also, Jolivet v. Cook*, 784 P.2d 1148, 1149–50 (Utah 1989). Therefore, the court in this instance did not err by admitting Allen's affidavit and utilizing it in its assessment.

■ The specific portions of the record upon which we rely to establish an *Alford* basis include the following: affidavits for arrest warrant, affidavits for search warrant of car, the original informations, the State's answers to requests for discovery, subpoenas for witnesses, the amended informations to which Stilling pled guilty, the expiation agreement, the transcript of the plea hearing, and Allen's affidavit. The record before the trial court contained each of these documents when Stilling's plea was taken, with the exception of the hearing transcript and the Allen affidavit.

The affidavits for arrest warrant naming Stilling on the original armed burglary charges were signed by Officer Zimmerman, of the Ogden Police Department, who averred that he was "personally acquainted with the facts in this case." Because the four charges were reduced to only three, we have only the three files for the charges to which Stilling pled guilty to lesser offenses. Two of them state:

> On 3/31/84 a white male suspect entered Wangsgards and held a gun to the bookkeeper telling her that it was a holdup and ordered her to open the safe. The bookkeeper and manager attempted to open the safe but could not get it open, the suspect ran from the store prior to being able to get into the safe and ran up to a vehicle parked in the parking lot with the owner in the vehicle, placed a gun to the owners head and ordered him out of the car. Suspect then fled in the car. He has been identified by employees of Wangsgards by photo lineup as being the person who attempted to rob them.
>
> On 3/31/84 a white male American, thin build, approximately 6 feet tall, with a mustache and large nose approached a

cashier and asked to see the manager to take care of a bad check his wife has written. He walked to where the manager was and told him he wanted to pick up a bad check his wife had written. He then pulled out a handgun from a brown paper sack and told the manager "this is a robbery, let's go up to the safe." The cash from three check stands was placed in the brown sack; the defendant then asked the manager for his keys and had him walk out to his car with him and told him he would leave the car about five blocks away. Defendant has been identified by photo lineup by employees of U & I as being the person who committed the robbery[.]

Officer Zimmerman also executed the following affidavit for search warrant, which resulted in issuance of a search warrant executed on an automobile owned by Stilling:

> The facts establishing the grounds for issuance of a Search Warrant Are: During the time period from 3/10/84, there were eight aggravated robberies in the Salt Lake City–Ogden area. All the robberies were done by a suspect who all witnesses describe as the same suspect, all were the same mode of operation, and all at grocery stores. During the course of the investigation, I have received information on a suspect from Oregon who was in the Ogden area at the time of the robberies. The suspect is Steven Stillings and has been possitively [sic] identified by photographs by six witnesses as the suspect in the robberies. A vehicle registered to Steven Stillings was abandoned in the Ogden area on about 3/16/84 and has been impounded by Ogden City and is being stored at 755 W 17th, Intermountain Auto. At least two of the robberies occurred prior to the car being abandoned. Stillings has been seen with the car since the first robbery occurred.

*See also Hunt v. Blackburn*, 128 U.S. 464, 470–71, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888); Rule 1.6(b)(3) Utah R.Prof. Conduct.

---

**10.** Because the affidavit was initially submitted in response to Stilling's claim of ineffective assistance of counsel, it did not violate the attorney-client privilege. Utah R.Evid. 504(d)(3).

The original informations described four Ogden area robberies, three occurring on March 31, 1984 and one on March 12, 1984. Each information described the crime, the date, the victim, use of a firearm or facsimile, and named witnesses from whom evidence was obtained. The original informations were read aloud at Stilling's arraignment.

In the course of discovery proceedings, the State provided the names of all potential witnesses for each of the four charges and anticipated trials. The number of witnesses ranged from eight to sixteen per trial. In addition, the record contains subpoenas served on some of those witnesses, in preparation for trial.

The amended informations were filed at the time of the plea hearing and Stilling was given copies of them. It is not clear if the amended informations were read at the plea hearing, the minute entry only stating that the "charges" were read. The informations each state upon oath that the complainant has reason to believe that the defendant committed a second degree felony of robbery. They further state that on March 31, 1984:

1. [Stilling] did unlawfully take personal property in the possession of Ted Browne (U & I COOP) from his person, or immediate presence, against his will, accomplished by means of force or fear.... This information is based on evidence obtained from the following witnesses: RODNEY BAILEY, TOD MC ELYEA, LT. ROCHELL, ROY PD

2. [Stilling] did unlawfully take personal property in the possession of Earl Deroboam from his person, or immediate presence, against his will, accomplished by means of force or fear.... This information is based on evidence obtained from the following witnesses: EARL DE ROBOAM, TOM HADDLEY, C.M. ZIMMERMAN, OPD

3. [Stilling] did unlawfully take personal property in the possession of Dorothy Smith (Wangsgard's Market) from her person, or immediate presence, against her will, accomplished by means of force or fear.... This information is based on

evidence obtained from the following witnesses; MIKE RODELL, DOROTHY SMITH, TOM HADLEY

The expiation agreement is not very helpful on this issue, but it does state that "[I, Stilling, am] in a position of severe exposure of being convicted on the 1st degree felonies originally charged against me."

The court's colloquy with Stilling does not address the State's case against Stilling and the elements of the offenses, but compared the first degree felony charges to the second degree felony charges and explained the different penalties that attached to each. Therefore, it did not add to the trial court's or this court's ability to assess an *Alford* factual basis for the charges. Bernard Allen's affidavit, however, bolsters our confidence in the strength of the State's case, by stating that "both the Petitioner [Stilling] and I felt that the prospects of actually winning a trial on any of the four (4) cases, based on the fact situation, was very slim indeed."

Viewing the record as a whole, we are privy to the basic facts constituting each charge to which Stilling pled, the identity of the victims, identity of witnesses the State was prepared to call, probable testimony identifying Stilling as the perpetrator of the crimes, consistency between the victims' descriptions of Stilling and his actual appearance, and the apparent belief of Stilling and his trial counsel that the State had a winable case. While this method of ferreting out a factual basis for the charges is less desirable than a prosecutor presenting the same at a plea hearing, it is sufficient to persuade us that the State had a viable basis, a factual basis, for prosecuting Stilling on the charges to which he pled. Thus, the trial court could have reasonably concluded that there was a factual basis for the *Alford* plea.

### Rule 11 Substantial Compliance

 Stilling also argues that the trial court failed to comply with Rule 11 during the plea hearing. This argument is based on more usual arguments that the court did not address each element of the charged

offenses and ascertain that Stilling understood fully the impact of his pleas. We are persuaded, however, as was Judge Roth, that the affidavit of Bernard Allen fully establishes that Stilling knowingly and intelligently entered his plea. The affidavit contains, among others, the following statements:

We discussed the elements of Aggravated Robbery at great length and attempted to examine them in detail in an effort to find a factual basis for escaping conviction.

[T]he elements of the offense of robbery were discussed in detail with the Petitioner by myself and the Amended Informations given to him which he read thoroughly, . . .

[There were numerous lengthy meetings] regarding the facts of the case, the potential for appeal and the eventual plea negotiation.

In those meetings the Petitioner made it clear to me that he fully and completely understood the facts of the case against him and the elements of the crimes with which he was charged and the elements of the crime that he plead to in the negotiation.

Based on the record as whole, we find substantial compliance with Rule 11 and that Stilling knowingly and voluntarily entered his guilty pleas.

### CONCLUSION

We conclude that the record in Stilling's case contains sufficient evidence of actual guilt to provide a factual basis for the plea as required by the decisions in *Alford* and *Willett*. We also conclude that there was substantial compliance with Rule 11 and that Stilling's pleas were knowing and voluntary. Further, the court did not err by admitting and considering the post plea hearing affidavit of Stilling's trial court counsel. We therefore affirm.

RUSSON, Associate Presiding Judge (concurring specially):

I concur, but with the following reservations. While the main opinion correctly states that in *Alford* plea cases, there must be a factual basis for the plea, *see supra* pp. 672–674, I do not join the main opinion's narrow reading of what constitutes a factual basis, wherein it states:

In *Alford* plea cases, however, when a defendant necessarily does not admit to all elements of the charged crimes, the record must be sufficient to satisfy the trial court and/or a reviewing court that the State's case is strong enough to warrant acceptance of the plea when guilt is not admitted by the defendant.

*Id.* at 674 (footnote omitted).

As explained in *Willett v. Barnes*, 842 P.2d 860 (Utah 1992), a factual basis is found when the record of facts establishes either that the defendant committed the charged crime *or* that other facts exist that would substantiate prosecution of the charge at trial. *Id.* at 862. Thus, under *Willett*, it is essential, at the time of the plea, for facts establishing the strength of the prosecution's case to be shown in order for the defendant to be able to evaluate the risks of conviction. Otherwise, the defendant could not truly make a knowing and voluntary plea. Accordingly, *Willett* ruled that a "court cannot be satisfied that a guilty plea is knowing and voluntary unless the record establishes facts that would place the defendant at risk of conviction should the matter proceed to trial." *Id.*

However, requiring evidence of actual guilt in *Alford* plea cases, as the main opinion does here, rather than requiring either evidence of actual guilt or facts that would otherwise substantiate prosecution of the charge at trial, is not compelled by *Willett*, nor by *Alford*, and is, as such, an unwarranted and ill-advised extension thereof.

JACKSON, Judge (concurring):

I concur with the result reached today. However, I write separately to point out that the majority opinion is unclear as to what level of evidence amounts to a showing of the factual basis required for an *Alford* plea. The opinion states that "there must be evidence from which a

court could reasonably find that the defendant was guilty—a factual basis for the plea." The opinion also states that the record in this case must reveal either facts that would support the prosecution of a defendant or suggest the defendant faces a substantial risk of conviction at trial. In the conclusion, the opinion states the record contains "sufficient evidence of actual guilt to provide a factual basis."

Further, it is potentially problematic to require a "sufficient" or "reasonable" factual basis for *Alford* pleas in cases involving pleas to lesser or unrelated offenses. Defendants may have any number of reasons to plead guilty. For example, it would make eminently good sense to preserve one's economic welfare and future employment by avoiding the "felony conviction" label. Also, many defendants plead guilty to avoid mandatory sentencing.

The problem with requiring even a "reasonable" or "sufficient" degree of evidence of a defendant's guilt is that no possibility exists for a judge to find evidence of guilt in some cases involving *Alford* pleas to a lesser or unrelated offense. For example, assume a defendant is charged with burglary, and the defendant has the requisite intent to commit theft but does not actually exercise control over any property. Assume also that the defendant, pursuant to a plea agreement, pleads guilty to a misdemeanor theft charge. A judge could not find "sufficient" or "reasonable" evidence of the defendant's guilt because one of the requisite elements of theft never occurred. Another example occurs when, pursuant to a plea agreement, a defendant pleads guilty to an attempted crime, rather than the actual crime. In this situation, the defendant may not have acted with the requisite intent required for the "attempted" crime. Thus, the above pleas are entered based upon imaginary or fictional sets of facts. In these situations, the requirement of any level of evidence of guilt would result in rejection of the guilty plea and frustration of the defendant's attempt to secure a more lenient sentence. It would also result in increased costs for the courts and would limit the options for plea bargains. A less rigid standard will allow the court discretion, will discourage future litigation of the plea bargain, and will allow the defendant leeway in determining his or her fate.